DECISION AND JUDGMENT ENTRY
{¶ 1} Albert M. Poling appeals the Hocking County Court of Common Pleas, Probate Division, decision denying his objections to its distribution order. Poling argues that the probate court erred when it: (1) failed to order the Estate to reimburse him for attorneys fees; (2) ordered all miscellaneous property be distributed to the co-executors of the Estate; (3) failed to order the Estate to transfer insurance proceeds recovered on real estate property he purchased; and (4) improperly awarded attorneys fees to the Estate's attorney. Because we find that the probate court properly overruled Appellant's objections on these matters, we disagree. Accordingly, we affirm the probate court's judgment.
 I. {¶ 2} This case arises out of a disputed estate settlement. The co-executors for the Estate are the decedent's children: Appellees Calvin L. Poling, Oliver C. Poling, and Gladys L. Carr, and Appellant Albert M. Poling. Because Appellant raised issues both as an individual and a beneficiary against the Estate, he obtained his own counsel.
 {¶ 3} An inventory of the tangible and intangible personal property and real estate belonging to the Estate was filed with the probate court. Item 8 of that inventory generally listed miscellaneous personal property, and valued it at $1,150. The probate court scheduled an oral hearing on the inventory listed for November 5, 2001. Appellant requested, and was granted, a continuance.
 {¶ 4} The probate court rescheduled the hearing for November 26, 2001. On the same day as the hearing, Appellant filed his exceptions to the inventory list. Appellant claimed, in part, that Item 8 included a metal hospital bed and metal desk that belong to him. The Magistrate's Decision and Order clarified that, pursuant to agreement by the parties, the metal hospital bed and metal desk were not part of the property of the Estate. The Magistrate then dismissed Appellant's exceptions to the inventory on the basis that they were not timely filed. The probate court adopted this decision.
 {¶ 5} In December 2001, the probate court ordered a new appraisal and the filing of an amended inventory. Appellees failed to comply with this order. In April 2002, the probate court appointed an appraiser and gave him fourteen days to appraise all property previously ordered appraised. The probate court also ordered the co-executors to file an amended inventory within ten days of completion of the appraisal. The co-executors were ordered to sign the amended inventory, but the probate court specifically noted that their signatures would not waive their rights to file exceptions or other documents.
 {¶ 6} The amended inventory was filed with the probate court in May 2002. Included in the amended inventory was Item 8, which generally listed miscellaneous property valued at $1,150. Neither Appellees nor Appellant filed exceptions to the amended inventory.
 {¶ 7} In 2004, the co-executors negotiated a settlement agreement, which the probate court recorded in an Agreed Entry. The probate court's entry states: "The Parties have reached settlement on all issues in this matter, and hereby voluntarily dismiss all pending claims, counterclaims, and cross-claims, with prejudice, pursuant to Ohio Civil Rule 41(A)(1)(b). In open Court on February 23, 2004, counsel for Plaintiffs recited the terms of the settlement and this Court asked Calvin L. Poling, Oliver C. Poling, and Gladys L. Carr and Albert M. Poling if each of them agreed to the settlement and each of them stated that they approved of all terms of the settlement."
 {¶ 8} The probate court accepted the parties settlement and ordered the following: "1. The Estate will sell all real estate (Items 10, 11, and 12 on the Inventory) (hereinafter "Real Estate") to Albert M. Poling for $409,000. 2. Albert M. Poling shall have until March 8, 2004 to acquire financing to purchase the Real Estate. The closing of the sale of the Real Estate to Albert M. Poling shall occur on or before March 15, 2004. 3. If Albert M. Poling cannot acquire financing to purchase the Real Estate by March 8, 2004, or the closing of the sale of the Real Estate does not occur on or before March 15, 2004, then all assets of the Estate listed on the Inventory shall be sold as soon as practicable at a public auction. This Court will appoint an auctioneer to sell said assets.
 {¶ 9} "4. If the sale of the Real Estate closes, then the Estate will distribute all farm equipment (Items 2, 3, 4, 5, 6, 7, and 9 on the Inventory) and the 1979 Dodge pickup (Item 1 on the Inventory) to Albert M. Poling. 5. If the sale of the Real Estate closes, then the Estate will pay up to $1,500 of the attorney fees of D. Joe Griffith and up to $1,500 of the attorney fees of Aaron R. Conrad. However, before payment is made by the Estate, Joe Griffith and Aaron Conrad shall submit invoices for the legal services rendered them. 6. If the sale of the Real Estate closes, then the Estate will pay to Albert M. Poling up to $1,500 for reimbursement of attorney fees that he has paid to Jeffrey Feyko. However, before payment is made by the Estate, Albert M. Poling shall provide proof of payment of the attorney fees to Jeffrey Feyko. 7. If the sale of the Real Estate closes, then the Estate will distribute all miscellaneous personal property (Item 8 on the Inventory) to Calvin L. Poling, Oliver C. Poling and Gladys L. Carr."
 {¶ 10} In July 2004, the probate court issued an entry finding that the Second Fiduciary's Account had been lawfully administered. One month later, the probate court issued an entry ordering distributions from that account. Specifically, the probate court ordered the bank to distribute: (1) $1,500 to Appellant for reimbursement of attorney fees paid to Jeffrey Feyko; (2) $3,000 to Dagger, Johnston, Miller, Ogilvie 
Hampson, LLP for payment of Appellant's attorney fees; (3) $66,736.48 to Carlile Patchen Murphy, LLP to pay the attorney fees for the Estate's counsel; (4) all costs from complying with this order to the bank; and (5) all remaining funds distributed in equal shares to the four co-executors.
 {¶ 11} Appellant, now acting pro se, entered objections to this order. In his objections, he claimed that: (1) the Estate's attorney had a conflict of interest because he represented Calvin L. Poling on an estate planning issue before this case; (2) the other three co-executors should pay the Estate attorney's fees because he represented their personal interests; and (3) the metal hospital bed and metal desk are included in Item 8 of the Inventory and belong to him. The objections are vague and repeatedly reference Appellant's belief that Appellees are not co-executors on the Estate and that the Estate's attorney has behaved inappropriately by acting on behalf of the Appellees in their individual and beneficiary capacities.
 {¶ 12} The probate court overruled Appellant's objections. In its judgment entry, the probate court appears to address objections that Appellant did not expressly make in writing. The probate court found that Appellant objected to the payment of attorney fees in the amount of $3,000 as set forth in the order of distribution. Specifically, the probate court referenced two cancelled checks which the Appellant provided and which show that he paid $1,500 to Attorney Griffith and $270 to Attorney Conrad. Appellant requested that the probate court order the Estate to reimburse him for these amounts.
 {¶ 13} The probate court sent copies of the cancelled checks to the Estate's attorney, and requested that the Estate's attorney contact the law firm for the two lawyers and determine what payment was made and is owed by Appellant. The probate court then ruled that any fees owed to Attorney Griffith be paid to him, but that such fees are not to exceed $1,500 as stated in Item 5 of the Agreed Entry. The court also ordered that the Estate pay Attorney Conrad any fees owed to him, but that such fees are not to exceed $1,500 as stated in Item 5 of the Agreed Entry. The probate court then found that if Attorney Griffith is owed less than $1,500 as a result of payments made by Appellant, the Estate must pay Appellant "an amount equal to the difference between $1,500 and the amount owed to [Attorney] Griffith." Also, if Attorney Conrad is owed less than $1,500 as a result of payments made by Appellant, the Estate must pay Appellant "an amount equal to the difference between the $1,500 and the amount owed to [Attorney] Conrad." Finally, pursuant to the Agreed Entry, the probate court ordered the Estate to reimburse Appellant $1,500 for fees paid to Attorney Feyko.
 {¶ 14} The probate court then addressed Appellant's argument that Item 8 of the Amended Inventory improperly included a metal hospital bed and metal desk that belong to him. The probate court found that Appellant filed a similar objection to the original inventory, which was dismissed for timeliness. Appellant then failed to file exceptions to the amended inventory, which included the same general characterization of miscellaneous property under Item 8. Finding Appellant's original exception was properly resolved, and that Appellant failed to file a subsequent exception to the amended inventory, the probate court overruled the current objection.
 {¶ 15} The probate court also addressed an argument relating to Appellant's purchase of real estate from the Estate. According to the probate court, Appellant argued that the Estate improperly collected insurance proceeds from a fire on the property before he actually purchased it. Appellant urged the probate court to award the insurance proceeds to him as the buyer. The probate court found that the fire occurred seven months before the purchase and that the Estate collected the insurance proceeds before the purchase. Further, the probate court found that Appellant was aware of the insurance proceeds and fire at the time he entered into the sales contract. Finding that the insurance proceeds were properly paid to the Estate and that Appellant was aware of that payment at the time he negotiated the purchase, the probate court declined to subsequently reform the contract.
 {¶ 16} Finally, the probate court addressed Appellant's argument that the Estate's attorney fees should not have been paid by the Estate, but by the Appellees in their individual capacities. The probate court noted that Appellant refuses to accept that the Appellees are actually the co-executors of the Estate and that the Estate's attorney does not represent them in their individual capacity. The probate court found that the issue of attorney fees is resolved by the Agreed Entry and that no further attorneys fees incurred by Appellant will be paid by the Estate.
 {¶ 17} Appellant appeals from this judgment entry, but raises no assignments of error.
 II. {¶ 18} At the outset, we note that Appellant's brief fails to comply with our well-established Rules of Appellate Procedure. Specifically, Appellant failed to include a statement of facts, a statement of the case, assignments of error, a table of contents, and citations of law in his brief, as required by App. R. 16. It is now within our judicial discretion to decline to address his arguments on these bases. See DeHartv. Aetna Life Ins. Co. (1982), 69 Ohio St.2d 189. However, in the interest of justice, we will address Appellant's claimed errors to the extent we can sufficiently discern the facts supporting them from his arguments.
 III. {¶ 19} In his first argument, Appellant claims that the probate court erred when it ordered the Estate's attorney to contact Attorneys Griffith and Conrad and determine if reimbursement to Appellant is owed. Appellant argues that it was improper for the probate court to give opposing counsel this authority.
 {¶ 20} A settlement agreement is a contract designed to terminate a claim by preventing or ending litigation. Continental W. CondominiumOwner's Assn. v. Howard E. Ferguson, Inc. (1995), 74 Ohio St.3d 501, 502. Settlement agreements are highly favored in the law. Wright v. Weyandt
(1977), 50 Ohio St.2d 194, syllabus. When parties voluntarily enter into an oral settlement agreement in the presence of the court, the agreement constitutes a binding contract. Spercel v. Sterling Industries, Inc.
(1972), 31 Ohio St.2d 36, paragraph one of the syllabus. As a result, unless a party has moved to set aside such an agreement, the trial court can enter judgment consistent with that agreement. Id. at paragraph two of the syllabus.
 {¶ 21} Here, the parties entered into an oral settlement agreement in the presence of the probate court. The probate court then drafted an Agreed Entry consistent with that agreement and entered judgment. As such, the settlement agreement constitutes a binding contract. SeeSpercel, supra, paragraphs one and two of the syllabus.
 {¶ 22} The settlement agreement required the Estate to pay up to $3000 of Appellant's attorneys fees if the sale of certain real estate closed and if the attorneys presented invoices to the Estate. In its distribution order, the probate court enforced that settlement agreement by requiring the Estate to pay $1500 to Attorney Griffith and $1500 to Attorney Conrad. After Appellant objected and claimed that he should be reimbursed for money he paid to the attorneys, the trial court ordered the Estate to determine if Appellant still owed the attorneys. If so, and these balances were less than $1500 each, then the court ordered the Estate to reimburse that difference to Appellant and pay the balance owed directly to the attorneys. If Appellant no longer owed any fees to the attorneys, then the Estate was ordered to reimburse Appellant up to $3,000 for amounts he already paid.
 {¶ 23} We can find nothing erroneous about this order. The probate court enforced the settlement agreement as set forth in the Agreed Entry. Appellant has not claimed that the Estate's attorney failed to execute the enforcement order. Moreover, if the Estate failed in its obligations under this judgment entry, then Appellant cannot challenge that failure for the first time on appeal. Stores Realty Co. v.Cleveland (1975), 41 Ohio St.2d 41, 43. Instead, Appellant must file a motion to enforce the settlement and have it first addressed by the probate court.
 {¶ 24} Finally, we note that the court appears to have carefully drafted the order so Appellant would not receive any unfair reimbursement. If Appellant still owed Attorneys Griffith and Conrad fees of, or in excess of, $1,500 then reimbursement to Appellant is not warranted. Instead, pursuant to the Agreed Entry, the Estate must directly pay the attorneys their outstanding fees in an amount not to exceed $1,500 each. Accordingly, we overrule Appellant's first argument.
 IV. {¶ 25} In his second argument, Appellant contends that the probate court improperly awarded Item 8 of the amended inventory to be distributed to Appellees. Specifically, Appellant argues that Item 8 includes a metal hospital bed and metal desk that are owned by him, and not part of the Estate.
 {¶ 26} R.C. 2115.02 requires the executor of an estate to provide a true inventory and appraisal of the decedent's estate to the probate court. Once the entry is filed, the probate court must schedule a hearing within thirty days. See R.C. 2115.16. Any person with an interest in the estate may file exceptions to the inventory "at any time prior to five days before the date set for the hearing or the date to which the hearing has been continued." Id. An entry overruling or sustaining objections to an inventory is a final appealable order. In re Estate of Counts (Sep. 18, 2000), Ross App. No. 99CA2507, citing Sheets v. Antes (1984),14 Ohio App.3d 278; In re Estate of Taylor (June 21, 1991), Lawrence App. No. 1957.
 {¶ 27} Here, the Magistrate overruled Appellant's objections to the original inventory on November 26, 2001. The probate court adopted that decision in an entry filed on March 5, 2002. That entry constituted a final appealable order, from which Appellant failed to timely appeal. SeeCounts, supra; App. R. 4. Therefore, Appellant cannot now attack the trial court's judgment that the metal hospital bed and metal desk were not included in the original inventory, or the judgment dismissing the exceptions for being untimely filed.
 {¶ 28} After the court-ordered appraisal of assets, the probate court set a hearing on the amended inventory. Appellant failed to file any exceptions to this inventory. A party cannot assert new arguments for the first time on appeal. Stores Realty Co., supra at 43. Therefore, we will not consider Appellant's arguments as they concern the amended inventory.
 {¶ 29} In summary, we find that Appellant failed to timely appeal from the probate court's entry overruling his exceptions to the original inventory. We also find that Appellant failed to timely file exceptions to the amended inventory, and is now barred from raising issues relating to that inventory for the first time on appeal. Accordingly, Appellant's second argument is without merit.
 V. {¶ 30} In his third argument, Appellant contends that the probate court erred when it declined to order the Estate to transfer the insurance proceeds from a fire on real estate purchased by Appellant. Appellant also argues that he purchased the real estate under blackmail, and that no contract exists for the sale.
 {¶ 31} We first address Appellant's argument that no contract exists regarding his purchase of the real estate. The statute of frauds requires a contract for the sale of land to be "in writing and signed by the party to be charged therewith or some other person thereunto by him or her lawfully authorized." R.C. 1335.05. Appellant argues that because the contract for sale was not reduced to writing with his signature, that no contract existed and the probate court could retroactively award him the insurance proceeds.
 {¶ 32} We find that a sufficient writing exists for this contract. The probate court reduced the agreement to writing in its Agreed Entry. That entry specifically details the real estate subject to sale, the purchase price, and financing arrangements. Appellant's attorney, acting as Appellant's agent, signed that entry on Appellant's behalf. Nothing in the record indicates to this court that Appellant's attorney was not duly authorized to make that signature. Therefore, the Agreed Entry constitutes a sufficient writing for statute of fraud purposes.
 {¶ 33} Appellant also argues that the trial court erred when it refused to reform his contract to include a provision transferring the previously collected insurance proceeds to him. Specifically, Appellant argues that it is only logical to assume that the terms of the contract would have included a transfer of the insurance proceeds. We disagree.
 {¶ 34} The Supreme Court of Ohio has repeatedly set forth the principles of contract interpretation. "In construing any written instrument, the primary and paramount objective is to ascertain the intent of the parties. * * * Intentions not expressed in the writing are deemed to have no existence and may not be shown by parol evidence."Aultman Hospital Assoc. v. Community Mutual Ins. Co. (1989),46 Ohio St.3d 51, 53. See, also, Trinova Corp. v. Pilkington Brothers,P.L.C. (1994), 70 Ohio St.3d 271, 276; Skivolocki v. East Ohio Gas Co.
(1974), 38 Ohio St.2d 244. Generally, the construction of a written contract is a matter of law. Latina v. Woodpath Development Co. (1991),57 Ohio St.3d 212, 214. In particular, if a contract is clear and unambiguous, then its interpretation is a matter of law and there is no issue of fact to be determined. Alexander v. Buckeye Pipe Line Co.
(1978), 53 Ohio St.2d 241. Therefore, our review is de novo, and we may substitute our judgment for that of the trial court. In re McVacy (Dec. 7, 1994), Lawrence App. No. 94CA7.
 {¶ 35} Here, the probate court detailed the settlement agreement in its Agreed Entry. That entry does not reference the fire or the insurance proceeds from the fire. Therefore, the only reasonable interpretation is that the parties did not contract to transfer the insurance proceeds. Moreover, Appellant has not entered any extrinsic evidence supporting his claim. While such evidence is most likely inadmissible pursuant to the parol evidence rule, without it Appellant cannot prove his claim and we have nothing to pass upon other than the plain language of the agreement. Because the Agreed Entry does not reference the insurance proceeds, let alone require a transfer of those proceeds, we find that the trial court properly overruled Appellant's objection.
 {¶ 36} Appellant also claims that the settlement agreement is void because he was blackmailed into entering into the agreement. Specifically, Appellant contends that he was told by his counsel and the Estate's counsel that he could either agree to purchase the real estate as part of the settlement or the matter would go to hearing and the probate court would likely order the property sold at public auction. Appellant urges us to find that this constitutes blackmail, and left him with no choice but to enter the settlement under duress. We disagree.
 {¶ 37} Blackmail is defined as "[a] threatening demand made without justification." Black's Law Dictionary (7th Ed. 1999) 163. Here, the negotiations for settlement simply do not meet the definition of blackmail. Appellant's counsel and the Estate advised him, in the process of negotiation, that if he refused to settle his claims by purchasing the disputed real estate, the case would go before the probate court and likely be sold at public auction. While Appellant may not have liked either choice, both choices were realistic, legal, and given with justification.
 {¶ 38} In summary, we find that the Agreed Entry constitutes a writing for purposes of the statute of frauds. We also find that the trial court properly interpreted the contract to not include a requirement that the Estate transfer insurance proceeds to Appellant. Finally, we find that the contract is not void for blackmail because the demanded settlement options were legal and with justification. Accordingly, we overrule Appellant's third argument.
 VI. {¶ 39} In his fourth argument, Appellant argues that the Estate's attorney improperly represented the other three co-executors in their individual capacities. As such, he argues that the probate court erred when it ordered the Estate to pay all of the Estate's attorney fees, but refused to order the Estate to pay all of Appellant's attorney fees.
 {¶ 40} R.C. 2113.36 permits the estate to reimburse an executor for reasonable attorney fees incurred in the administration of the estate. It is within the discretion of the probate court to determine whether an executor's attorney fees are reasonable. Whitaker v. Estate of Whitaker
(1995), 105 Ohio App.3d 46, 59, citing In re Estate of Fugate
(1993), 86 Ohio App.3d 293. We will not reverse a probate court's decision regarding attorney fees absent an abuse of discretion. Id., citing In re Estate of Wirebaugh (1992), 84 Ohio App.3d 1, 5.
 {¶ 41} We first address Appellant's argument that the Estate's attorney acted improperly in this case, and therefore was not entitled to have the Estate pay his fees. Appellant asserts that the Estate attorney represented one of the co-executors on a separate estate planning issue years before this current case came to fruition. However, nothing in the record supports Appellant's allegations, and, therefore, we cannot find that the probate court abused its discretion when it denied Appellant's objection on this basis.
 {¶ 42} We also find that the probate court properly ordered the Estate's attorney fees paid by the Estate. R.C. 2113.36 provides that "[w]hen an attorney has been employed in the administration of the estate, reasonable attorney fees paid by the executor or administrator shall be allowed as part of the expenses of administration. The court may at any time during administration fix the amount of such fees and, on application of the executor or administrator or the attorney, shall fix the amount thereof." It was within the discretion of the probate court to determine that the executor's attorney fees were reasonable. Appellant fails to point to anything in the record that shows the trial court abused its discretion in awarding the fees. Our review of the record reveals nothing as well. Accordingly, we find that the trial court properly ordered the Estate to pay reasonable attorney fees to its counsel.
 {¶ 43} Finally, we address Appellant's argument that the probate court erred when it declined to order the Estate to pay his entire legal fees. In general, a prevailing party cannot recover attorney fees absent specific statutory authorization or a finding that the losing party acted in bad faith. Sorin Bd. of Ed. of Warrensville Heights 180-182. Here, Appellant is not a prevailing party. Instead, he is a party to a settlement agreement. Therefore, Appellant is not entitled to attorney fees above what he agreed to in the settlement.
 {¶ 44} Moreover, even assuming Appellant was a prevailing party, he is not entitled to recover attorney fees. R.C. 2113.36 authorizes a trial court to order the Estate to pay attorney fees for an attorney employed in the administration of the Estate. That statute does not authorize the trial court to award attorney fees to an executor who retains legal counsel to pursue his individual and beneficiary interests. Without such statutory authorization, the trial court could not order the Estate to pay Appellant's attorney fees above that set out in the settlement agreement. Therefore, we find that the trial court properly overruled Appellant's objection.
 {¶ 45} In summary, we find that the trial court properly overruled Appellant's objection because R.C. 2113.36 authorized the court to order the Estate to pay its own attorney fees, but did not authorize the court to order the Estate to pay Appellant's attorney fees. Accordingly, we overrule Appellant's fourth and final argument.
 VII. {¶ 46} In conclusion, we find that the probate court properly enforced the settlement agreement requiring the Estate to pay up to $3,000 of Appellant's attorney fees. We also find Appellant failed to timely appeal the probate court's decision to overrule his exceptions to the original inventory, and, therefore, cannot now argue those issues on this appeal. We further find that Appellant cannot raise issues regarding the amended inventory because he failed to file exceptions to that inventory. Next, we find that a sufficient writing exists to support the settlement agreement requiring Appellant to purchase real estate from the estate, and further find that Appellant's failure to negotiate for fire damage compensation on that property leaves him without relief. Finally, we find that the probate court properly ordered the Estate to pay its counsels attorney fees, and that the court properly declined to order the Estate to pay Appellant's attorney fees above the amount agreed upon. Accordingly, we affirm the probate court's judgment.
JUDGMENT AFFIRMED.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED and that Appellee recover of Appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Hocking County Court of Common Pleas, Probate Division to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Abele, P.J. and Harsha, J.: Concur in Judgment and Opinion.